STATE OF IOWA, Appellee, v. JOHN DELANTY, Appellant.

No. 39664.

APRIL 14, 1930.

REHEARING DENIED OCTOBER 23, 1930.

*Robertson & Robertson,* for appellant.

*John Fletcher,* Attorney-general, and *Frank E. Northrop,* for appellee.

KINDIG, J.—On March 14, 1928, the grand jury of Pottawattamie County, at Council Bluffs, returned an indictment against the defendant-appellant, charging him with the crime of larceny, as follows:

"* * * The said John Delanty, on or about the 17th day of October, 1927, * * * did willfully, unlawfully, and feloniously take, steal, and carry away a certain domestic animal, to wit, a boar hog, of the value of $75, and the property of Chris Christensen * * *."

To that indictment the appellant, who. was then defendant, pleaded "not guilty."

The State offered evidence tending to show that Chris Christensen was a farmer, living with his family in Garner Township, Pottawattamie County. Christensen owned the red boar hog named in the indictment, and had the same upon his farm until October 16, 1927. This hog weighed about 625 pounds, and was a thoroughbred, of fine quality. In the morning of October 17th, a search was made for the hog, but he could not be found. Several days later, the hog is alleged to have been found in the stockyards at South Omaha, Nebraska. Investigation disclosed that the animal was brought to the stockyards by the appellant in his truck on October 17th in the year aforesaid, at about 6 o'clock P. M. Six sows were also in appellant's truck at that time. All the hogs were sold at the South Omaha yards. Dispute arises concerning the identity of the hog delivered at the yards by appellant. It is claimed by the State that the animal found in the South Omaha stockyards belonged to Christensen, while appellant maintains that said boar was not Christensen's property, but that of Leo Delanty, appellant's brother.

By way of further explanation, the appellant stated that he was engaged in the truck business for hire. While he was pursuing this occupation, it is alleged, the appellant, on October 1, 1927, "was employed by his brother, Leo Delanty, to haul a red large boar, weighing between six and seven hundred

pounds, from the stockyards in River Sioux, Iowa, to Mike Delanty's place, which was about three quarters of a mile north of Neola.'' Mike Delanty, appellant's uncle, was engaged in the business of writing insurance and buying live stock. Then, on the 17th of October, 1927, appellant hauled four other hogs for his brother Leo. These animals were purchased by Leo Delanty from a man named Culley, who lived southeast of Council Bluffs. That afternoon or night, appellant and Leo drove with the four hogs thus purchased to Council Bluffs. Upon arriving there, Leo asked that appellant drive to the Mike Delanty place, near Neola (which is northeast of Council Bluffs), and transport from there to the South Omaha, Nebraska, market the red boar hog aforesaid. Consequently, appellant claims, he went after the boar hog with his truck, containing said four hogs which Leo had purchased that day from Culley, and on the way picked up two hogs for Charles Duffy, who lived near the Christensen farm. Thereafter, appellant asserts, he drove from Duffy's place to Omaha, Nebraska, with the seven hogs. Of these, as aforesaid, two belonged to Duffy, and the remaining five, including the big boar, were owned, appellant asserts, by his brother, Leo.

A controversy, therefore, arose at the trial concerning whether appellant stole the large red boar from Christensen, as charged in the indictment, or merely transported it for another, in the usual course of the trucking business. With those issues involved, the district court, during the trial, gave the jury the following instruction:

''Where property stolen is, soon after the larceny, found in the possession of some person, and such possession is unexplained, the presumption is that the person having such possession is the person who committed the larceny; and, in the absence of any explanation, the fact of such possession of property recently stolen is sufficient to warrant the conviction of the person having such possession of the property stolen, unless the evidence and circumstances disclosing such possession and the nature of it are such as to leave a reasonable doubt as to whether such person may not have come honestly into the possession of such property.''

As a part of that instruction, the trial court told the jury

how to apply the principle thus stated to the facts in the case at bar. When doing so, the substance of the charge above quoted was again restated, and the burden placed upon the appellant to show that he *honestly* came "into possession" of the large red boar hog. Exception to this instruction was duly taken by the appellant, on the theory that it was erroneous and prejudicial. Basis for such error and prejudice is founded upon the · ground that the charge cast upon the appellant an undue burden of proof. Complaint likewise is made in this court.

Manifestly, there is merit in appellant's position; for the instruction, in effect, required the jury to return a verdict for the State unless the defendant overcame the presumption of guilt. Furthermore, the trial court placed upon the appellant the duty of showing that he honestly came into possession of the hog. There is no presumption of guilt in a criminal case of this kind. An inference, however, may arise from the recent possession of stolen property, tending to connect the possessor with the larceny. That inference, under proper conditions, may furnish a suitable substitute for a link missing from, or support one already in, the chain of facts and circumstances connecting the defendant-appellant with the said crime. Nevertheless, at all times the presumption is in favor of innocence. Throughout the trial, the burden is cast upon the State to prove the appellant guilty beyond a reasonable doubt. The law does not require that appellant prove that his possession was honestly obtained. He may have received the property dishonestly, yet not through a larceny. Any explanation, therefore, of the possession which was inconsistent with guilt would be sufficient in the premises.

This subject has been before us on many previous occasions, and quotations from some of our opinions will elucidate at this juncture. In *State v. Smith,* 207 Iowa 1345, we said: · ·

"Manifestly, the State, when meeting the necessary proof [in a larceny case], may call to its assistance the circumstance of possessing recently stolen property. An inference may arise therefrom that the defendant is one who did the stealing. Throughout the entire trial, however, the defendant is entitled to the historical presumption of innocence, and must be convicted beyond a reasonable doubt. No presumption that he is guilty at any time exists. Even the inference arising from the

possession of recently stolen property must be considered with all the other evidence, as well as the lack thereof, and if from the entire record the jury still entertains a reasonable doubt of the defendant's guilt, there should be an acquittal. * * * Furthermore, it was not incumbent upon appellant to show that his possession was 'honest and rightful.' If he did not steal the chickens, his possession of them was immaterial. Maybe such 'possession' was dishonest and wrong, yet the appellant would not be guilty of the crime charged if he did not steal the poultry. Had he obtained the personal property wrongfully by means independent of the present charge, there would be no guilt under the specific indictment.''

Likewise, in *State v. Ivey*, 196 Iowa 270, on page 273, we declared:

''It is not correct to say that the unexplained possession of recently stolen property 'is sufficient to raise a *presumption* of defendant's guilt.' What the court [in the case there discussed] doubtless meant was that a 'permissible inference' may arise from the possession of recently stolen property that the one in such possession is guilty of the larceny. At no stage of the proceedings does the law raise a 'presumption' of the guilt of a person charged with crime, nor does it ever cast upon him the burden of satisfying the jury of his innocence. A 'permissible inference' of guilt may be drawn from certain established facts, such as the unexplained possession of recently stolen property, but no 'presumption' of guilt arises therefrom. At all times, and throughout the case, the burden rests upon the State to establish the guilt of the defendant beyond a reasonable doubt. It may be true that, in some of our earlier decisions, we have tolerated the use of the word 'presumption,' in instructions on this subject, where it appeared from all of the instructions in the case that the jury would understand that the word 'presumption' was used in the sense of 'permissible inference,' and where the proper burden was placed upon the State throughout to establish the guilt of the defendant beyond a reasonable doubt. But in our later cases, we have expressly disapproved of such an instruction.''

Also, in *State v. Harris*, 194 Iowa 1304, on pages 1305 and 1306, we stated:

"It is the rule in a prosecution for larceny that proof of defendant's possession of recently stolen property, where such possession is unexplained, constitutes sufficient prima-facie evidence to warrant the jury in finding the defendant guilty of the larceny. * * * It is not correct to say that any *burden* of proof is cast upon the defendant. Such an instruction implies a legal presumption of guilt obligatory upon the jury, if the defendant fail to meet the burden thus cast upon him. Nor was it proper to fix *honesty* of acquisition of the possession of the property as a standard of explanation sufficient to rebut the prima-facie case. If the defendant's explanation should show that he acquired his possession in a manner independent of the facts charged in the indictment, and consistent with his innocence thereof, it would be a sufficient explanation for the purpose of his defense, even though it were tainted with other dishonesty."

To the same effect, see *State v. Bricker,* 178 Iowa 297; *State v. Brady,* 121 Iowa 561.

Enough has been quoted from previous cases to indicate the error in the instruction under consideration. Here the district court told the jury that the recent possession of stolen property, if unexplained, created a presumption that the possessor "committed the larceny." Thus the burden would necessarily fall upon appellant's shoulders to overcome the presumption. Such is not the law, as indicated in the excerpts from the foregoing cases. Moreover, the explanation, according to the instruction, must reveal that the possessor honestly obtained possession. Larceny is charged in the indictment; not the unlawful receipt of stolen property, or any other offense. If it be assumed that someone stole Christensen's hog, and that appellant wrongfully came into possession of it, nevertheless he may not have committed the offense named in the indictment. It may be that the defendant-appellant did not come into possession of the boar hog honestly. Whether he did or not is quite immaterial, unless the larceny was committed by him. If appellant did not steal the hog, he is not guilty under the indictment, regardless of the manner in which possession was obtained.

Other propositions are argued, but we find it unnecessary to discuss them at this time.

Wherefore, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.